**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P:(410) 962-4953 — F:(410) 962-2985**

November 2, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Carida W. v. Frank Bisignano, Social Security Administration*
Civil No. 1:26-cv-00283-JMC

Dear Counsel:

Carida W. ("Plaintiff") petitioned this Court on January 23, 2026, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claim for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 10, 12, 13). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the decision of the SSA for the reasons explained below.

## I. Procedural Background

Plaintiff filed her Title II application for DIB on October 25, 2023, alleging disability as of October 25, 2023. (Tr. 17, 180-183).[1] Plaintiff's claim was denied initially on May 13, 2024, and upon reconsideration on October 21, 2024. *See id.* at 17, 82-86, 94-97. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 17, 102. ALJ Clary Simmonds conducted a telephone hearing on May 13, 2025. *See id.* at 14-37. ALJ Simmonds determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* Thereafter, the Appeals Council affirmed the ALJ's decision. *Id.* at 1-6.

## II. The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two,

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 6) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since "October 25, 2023, the alleged onset date." (Tr. 20). At step two, the determined that Plaintiff suffered from the following severe impairments:

> history of cervical cancer status post hysterectomy, asthma, neuropathy, major depressive disorder, anxiety disorder, post traumatic stress disorder ("PTSD"), and mild cognitive impairment. (20 CFR 404.1520(c)).

*Id.* at 20. In making that determination, the ALJ reasoned,

> The record additionally shows that the claimant underwent a consultative State agency psychological evaluation in early May 2024. She reported sleep disturbance and feelings of worthlessness. She further reported difficulty describing activities to other people, doing multistep activities, and using reason and judgment to make decisions. She also reported problems initiating and sustaining conversation, completing tasks in a timely manner, sustaining ordinary routines, and problems with self-monitoring including not tiring easily, difficulty responding to demands, and problems managing symptoms. On exam, she was noted to be oriented but had noticeable problems with memory and attention during the interview. For example, it was noted that all the emotional status evaluations had to be read to her because she had difficulty reading them to herself. It was further noted that she seemed very anxious and stated she was "having a mild panic attack." It was also noted that she seemed restless and somewhat hyperactive and impulsive. Her attention, concentration, and memory were noted to be limited, and her judgment, insight, and fund of general knowledge were noted to seem only fair. Her mood seemed anxious, depressed, and irritable, although her affect and thought content were noted to be appropriate. On the mini-mental status evaluation, she scored 23/30, which was assessed as a mild cognitive impairment. She was noted to miss one item on the orientation subtest and two items on the attention and concentration scale. She had no recall of three words that were read to her less than a minute earlier. Her performance on that test was noted to indicate problems with memory. She was also administrated the Montreal Cognitive Assessment, scoring 22/30, which also

> fell in the mild cognitive impairment range. She missed one item on the spatial subtest because she was unable to do a task requiring breaking set and shifting focus rapidly. Her responses to the Dean Woodcock emotional status evaluation indicated a major depressive disorder (Exhibits 3F, 4F).

*Id.* at 22. At step three, the ALJ determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 23; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926).

Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can understand, remember, and carry out simple instructions and make simple work-related decisions. Can maintain pace for work involving simple instructions. Can maintain pace for non-production work (meaning no assembly line type work or where the work of one affects the work of others and where there are strict quota expectations. Can have occasional exposure to atmospheric conditions (dusts/fumes/odors/gases/poor ventilation and other pulmonary irritants).

*Id.* at 27. The ALJ further reasoned,

> J. Smith, Psy.D., reviewed the record for the State agency and found the that the claimant has only mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing herself and moderate limitations in concentrating, persisting, or maintaining pace. These prior administrative medical findings are persuasive to the extent consistent with the limitations assessed herein. However, I found no support in the record for the limitations in social interaction. I find she is more limited in understanding, remembering, and applying information based on the clinical findings from the consultative State agency psychological evaluation in Exhibits 3F and 4F. She has moderate limitations in concentration and focus related to depressive symptoms impairing her ability to initiate and perform more complicated and unfamiliar tasks, especially for prolonged periods and variation in attendance and pace.

*Id.* at 31. The ALJ further noted that the Plaintiff had no relevant past work. *Id.* at 32.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) a Marker (DOT 209.587-034), 115,000 jobs nationally; (2) a Photocopying Machine Operator (DOT 207.685-014), 5,000 jobs nationally; and (3) Routing Clerk (DOT 222.687-022), 55,000 jobs nationally. *Id.* at 32-33. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 25, 2023, through the date

of the ALJ's decision. *Id.* at 33.

## III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV. Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Plaintiff faults the ALJ's RFC determination on the ground that the ALJ "erred by formulating and relying upon an inadequate hypothetical to the vocational expert, rendering the RFC unreviewable and the step-five finding unsupported by substantial evidence." (ECF No. 10 at 7).[2] For the reasons that follow, the Court disagrees with Plaintiff. As such, I will AFFIRM the case.

Plaintiff argues that remand is necessary "because the ALJ set forth an inadequate hypothetical to the vocational expert and then relied on the testimony of the vocational expert to conclude that Plaintiff could perform work that exists in significant numbers in the national economy." (ECF No. 10 at 7). Specifically, Plaintiff claims that the ALJ failed to "define a limitation she posed to the vocational expert and subsequently included in the RFC." *Id.* The hypothetical to the vocational expert provided that Plaintiff "can maintain pace for non-production work, meaning no assembly line type work or work where one affects the work of others, and where there are strict quota expectations." *Id.* at 7-8; (Tr. 61). This limitation was incorporated into the RFC assessment which provides that Plaintiff "[c]an maintain pace for non-production work (meaning no assembly line type work or where the work of one affects the work of others and where there are strict quota expectations[)]." (Tr. 27).

Plaintiff argues that the phrase "non-production work" is not defined "within Social Security Regulations, the Dictionary of Occupational Titles, or the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles." (ECF No. 10 at 8). Therefore, Plaintiff claims that the ALJ failed to adequately define "non-production work" and states that the terms "no assembly line type work," work "where one affects the work of others," and "strict quota expectations," fail to adequately define it. *Id.* at 8. Plaintiff avers that this "forecloses meaningful review of the full scope of the intended limitation." *Id.*

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

It is true certain pace limitations are insufficient on their own to adequately define a hypothetical. *See Darrin M. v. Bisignano*, No. CV CJC-25-3069, 2026 WL 2436394, at *3 (D. Md. Aug. 20, 2026). This Court has explained that the following pace limitations are not sufficiently defined without further explanation:

> limiting a claimant to work not "requiring a production rate or demand pace," *Thomas*, 916 F.3d at 312, limiting a claimant to a "non-production oriented work setting," [*Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019)], and limiting a claimant to work with "no fast-paced production requirements such as assembly line work or piecemeal quotas," *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548, at *4–5 (4th Cir. Jan. 7, 2025). Thus, if an ALJ poses a hypothetical using one of the above three pace limitations, they must further explain the scope of the limitation to adequately define it.

*Id.* at *3. For example, in *Perry v. Berryhill*, the Fourth Circuit reversed and remanded a case when "the ALJ's reference to a 'non-production oriented work setting'" was not properly explained. 765

F. App'x at 872. There, the hypothetical made it "difficult, if not impossible, to evaluate whether restricting [the claimant] to a 'non-production oriented work setting' properly accounted for [his] well-documented limitations in concentration, persistence, or pace." *Id.* The *Perry* court contrasted that hypothetical to one posed in *Sizemore v. Berryhill*, reasoning

> the ALJ in *Sizemore* provided additional context, explaining that the claimant could perform work only in a "low stress" setting, without any "fast-paced work" or "public contact," to account for moderate limitations in concentration, persistence, or pace; those "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations."

*Id.* at n.1 (citing *Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017). In *Amy F. v. Bisignano*, this Court similarly concluded that the ALJ erred when he used an undefined "no fast-paced production" limitation in a hypothetical posed to a vocational expert. *Amy F. v. Bisignano*, Civil No. 24-2192-DRM, 2025 WL 2062616 (D. Md. July 22, 2025); *see also Al-Nissa J. v. Bisignano*, Civil No. 25-1593-DRM, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) (discussing *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025)).

In *Linger v. Comm'r of Soc. Sec.*, the Fourth Circuit recognized that a similar phrase, "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5. Also, in *Al-Nissa J. v. Bisignano* the ALJ limited a plaintiff to tasks that do not involve a "specific production rate pace, such as assembly line work or an hourly production quota." 2026 WL 1088433, at *3. The Court reasoned that this limitation is analogous to the impermissible *Thomas*, *Perry*, and *Linger* hypotheticals because they were not clear enough to afford meaningful judicial review. *Id.* at *4. The Court noted that the *Linger* reasoning is "persuasive in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas." *Id.* The Court noted several other recent examples in which this Court has remanded similarly deficient hypotheticals. *E.g.*, *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *4 (D. Md. Feb. 25, 2026) (finding inadequate a limitation to tasks not involving "specific rate production, such as assembly line work or work that requires hourly quotas"); *Chad H. v. Bisignano*, No. DRM-25-0380, 2026 WL 483338, at *3–5 (D. Md. Feb. 20, 2026) (finding inadequate a limitation to tasks not involving "specific production rates").

By contrast, this Court has upheld references to fast paced production work when properly explained in context. *See, e.g.*, *Stacie R. v. Dudek*, Civil No. 24-0474-CDA, 2025 WL 948376, at *4 (D. Md. March 28, 2025) (indicating "the 'high-quota production-rate pace' limitation adequately addresses Plaintiff's moderate CPP limitation" when the plaintiff was restricted to "positions that do not require a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others")). Also, in *Darrin M. v. Bisignano*, the ALJ posed a hypothetical to the vocational expert limiting the plaintiff to "non-production work, and by non-production I mean no assembly line work where coworkers

are side by side and the work of one affects the work of others." 2026 WL 2436394, at *3. The ALJ then limited the plaintiff to "non-production work (no assembly line work)." *Id.* at *2. In determining that the limitation was adequately defined, the Court first explained that the terms "'non-production work' and 'assembly line work' are inadequately defined on their own." *Id.* at *3. However, the Court found that the ALJ "provided two distinct criteria . . . against which the vocational expert could filter potential jobs that the claimant could not perform[,]" which adequately defined "'the intended scope of the limitation.'" *Id.* at *4 (quoting *Linger*, 2025 WL 40548, at *5). Also, the Court emphasized that the language served as "a *definition* of, rather than an *example* of, the limitation." *Id.* (emphasis in original).

Additionally, in *Margret R. v. Bisignano*, this Court determined that an RFC and hypothetical to the vocational expert were adequately defined by providing that the plaintiff could "maintain pace for simple non-production rate tasks - meaning no assembly line work or work requiring meeting strict quotas." No. CV 25-2814-DRM, 2026 WL 2425935, at *4–5 (D. Md. Aug. 19, 2026). The court distinguished the RFC from prior cases involving "RFCs or VE hypotheticals with the terms 'production rate,' 'production pace,' or similar, coupled with examples such as assembly line work or work with time- or piece-based quotas." *Id.* at *4. The Court explained that "the ALJ made clear exactly what she meant" rather than relying on language including "such as," "as in," or "e.g." *Id.* Accordingly, the ALJ's RFC was "sufficiently articulated to be reviewable." *Id.*; *see also Autumn C. v. Bisignano*, No. EA-25-1592, 2026 WL 2042105, at *3 (D. Md. July 15, 2026).

Here, the hypothetical posed to the vocational expert is most similar to those in *Darrin M.* and *Margret R.* The ALJ restricted the Plaintiff to simple non-production rate work, defining the restriction to mean "no assembly line type work or where the work of one affects the work of others and where there are strict quota expectations no assembly-line work or where the work of one affect the work of others and where there is strict quota expectations." (Tr. 27). Like in *Darrin M.*, the ALJ's language provides distinct criteria against which the vocational expert could filter potential jobs that Plaintiff could not perform, adequately defining the scope of the limitation. *See* 2026 WL 2436394, at *4. The ALJ made clear how non-production work was defined and did not suggest that assembly line work or work involving strict quotas were mere examples. Additionally, this Court has found that "[b]oth concepts—assembly lines, and strict (i.e. rigidly enforced) quotas—are easily understood in common parlance." concepts—assembly lines, and strict (i.e. rigidly enforced) quotas—are easily understood in common parlance. *Margaret R.*, 2026 WL 2425935, at *3; *see also Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021).

Plaintiff argues that *William G. v. Bisignano* is controlling. No. CV 25-0731-DRM, 2026 WL 456022, at *1 (D. Md. Feb. 18, 2026). There, the ALJ asked the vocational expert: "And are these positions deemed simple, routine, repetitive, not production pace rate? Meaning no assembly line type work, no hourly quotas. The work is done at a consistent pace with only occasional simple decision making?" Plaintiff argues that the limitations in this case are no more clear than the limitation in *William G*, as both ALJ's used the term "meaning" before discussing assembly-line work and work involving quotas. (ECF No. 13 at 3). The Court acknowledges that *William G.* reached a different conclusion than both *Darrin M.* and *Margret R.* regarding similar pace limitations. Nevertheless, this Court considers these decisions in light of the Fourth Circuit's

precedent to the limitation at issue. The Court ultimately finds the reasoning of the more recent *Darrin M.* and *Margaret R.* more persuasive under the circumstances presented in this case.

As such, the Court finds that the ALJ's RFC finding is sufficiently articulated to be reviewable. Additionally, the Court finds that the ALJ supported her RFC analysis with substantial evidence and adequate reasoning, building a logical bridge from the evidence to the conclusion. In doing so, the ALJ's conclusions in the RFC are accompanied by a narrative discussion describing the evidence that supports it. For example, the ALJ addressed Plaintiff's limitations as follows:

> J. Smith, Psy.D., reviewed the record for the State agency and found the that the claimant has only mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing herself and moderate limitations in concentrating, persisting, or maintaining pace. These prior administrative medical findings are persuasive to the extent consistent with the limitations assessed herein. However, I found no support in the record for the limitations in social interaction. I find she is more limited in understanding, remembering, and applying information based on the clinical findings from the consultative State agency psychological evaluation in Exhibits 3F and 4F. She has moderate limitations in concentration and focus related to depressive symptoms impairing her ability to initiate and perform more complicated and unfamiliar tasks, especially for prolonged periods and variation in attendance and pace.

(Tr. 31). A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996). Whether the Court would have agreed with Plaintiff or reached the same conclusions as the ALJ is not the question before the Court. Therefore, given that the ALJ incorporated the same production limitation into the hypothetical posed to the vocational expert, the Court finds that the vocational expert could determine with adequate certainly whether an individual with such restrictions was capable of performing the jobs of marker, photocopying machine operator, and routing clerk. *See Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999*)* ("The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question."); *see also Darrin M.*, 2026 WL 2436394, at *3. Accordingly, the court AFFIRMS.

## V. Conclusion

For the reasons set forth herein, pursuant to sentence for of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk is directed to close the case

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge